REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1020

September Term, 2015

PEDRO ALMAZO ROJAS, ET AL.

v.

BOARD OF LIQUOR LICENSE
COMMISSIONERS FOR
BALTIMORE CITY

Wright,
Kehoe,
Arthur,

JJ.

Opinion by Wright, J.

Filed: October 26, 2016

This appeal arises from a judgment of the Circuit Court for Baltimore City entered on June 23, 2015, which affirmed the decision of appellee, the Board of Liquor License Commissioners for Baltimore City ("Liquor Board"), finding that appellants, Pedro Almazo Rojas, Carlos Navarro Sotelo, and Amigos Bar, Inc. t/a Amigos Bar violated Rule 4.05(a) "Prohibited Hours" and Rule 4.18 "Illegal Conduct" of the Rules and Regulations for the Baltimore City Liquor Board ("Liquor Board Rules"). Accordingly, the circuit court upheld the sanctions imposed by the Liquor Board, which included a four-day suspension, a $3,000.00 fine, and a $125.00 administrative fee.[1] On July 10, 2015, appellants timely appealed.

## Questions Presented

Appellants ask:

1.     Did the Liquor Board err in finding [appellants] guilty of violating Liquor Board Rule 4.05(a) Prohibited Hours, where [appellants were] not open past 1:00 a.m. Eastern Standard Time on November 2, 2014?

2.     Did the Liquor Board err in finding [appellants] guilty of violating Liquor Board Rule 4.18 Illegal Conduct, where two patrons were dancing together on November 2, 2014?

3.     Did the Liquor Board deny [appellants] a fair hearing by reviewing letters *ex parte* from two city councilmen and a community association official requesting that the Liquor Board impose the maximum penalty allowed?

---

[1] Appellants served the four-day suspension prior to filing their Petition for Judicial Review, as the Liquor Board denied their request for a stay.

We answer "no" to the first and third questions, and as to the second question, the Liquor Board concedes that it erred in finding that appellants violated Rule 4.18. As such, we uphold the Liquor Board's finding of a Rule 4.05(a) violation, reverse its finding of a Rule 4.18 violation, and remand the case to the circuit court with instructions to remand to the Liquor Board so that it can reassess the sanctions accordingly.

### Facts

Amigos Bar is a tavern business located at 400 South Eaton Street, Baltimore, Maryland 21224, for which Rojas and Sotelo served as the liquor licensees. Appellants[2] hold a Baltimore City Class D Liquor License authorizing the sale of beer, wine, and liquor at Amigos Bar. The liquor license permits alcohol sales "at any time except from [] 1:00 A.M. until 6:00 A.M. daily and no sales on Sunday from 1:00 A.M. until 6:00 A.M. Monday unless such hours shall be further extended or limited by law." In addition, Amigos Bar has a Certificate of Occupancy specifying that it may "continue to use 1st [floor] of premises for a tavern with out [sic] live entertainment . . . ."

On November 2, 2014, at 1:23 a.m. Eastern Daylight Time ("EDT"), Baltimore City Police Lieutenant William Colburn and Baltimore City Liquor Inspector Tommy Karanikolis were conducting random checks of liquor licenses throughout the Southeastern District of Baltimore City when they noticed that Amigos Bar appeared to be open. Lt. Colburn knew the time restrictions on Amigos Bar's license from previous

---

[2] According to appellants, while this matter was pending before the circuit court, Rojas ceased to continue as a licensee. Sotelo, however, continues to be a licensee on behalf of Amigos Bar.

2

experience,[3] and both men knew that on that night, Daylight Saving Time would end at

2:00 a.m. EDT, at which time Eastern Standard Time ("EST") would resume.[4]

Inspector Karanikolis approached Amigos Bar first. He saw a bouncer outside and

a sign indicating that the tavern was open. Upon entering the building, Inspector

Karanikolis observed about 13 or 14 people with drinks. Although he did not see anyone

actually drinking their beverages, he noted that the patrons had drinks inches away from

them, and he saw people paying for drinks as they left the bar.

---

[3] Lt. Colburn testified that police had warned Amigos Bar to stop serving after 1 a.m. on three or four previous occasions, including one incident where police responded to a 911 call by a citizen complaining about the tavern being open past 1 a.m.

[4] "Federal oversight of time zones began in 1918 with the enactment of the Standard Time Act, which vested the Interstate Commerce Commission with the responsibility for establishing boundaries between the standard time zones in the continental United States." U.S Department of Transportation, *Uniform Time*, https://www.transportation.gov/regulations/time-act (last visited Oct. 12, 2016). Daylight Saving Time was also introduced in 1918. Library of Congress, *Today in History – November 18*, https://www.loc.gov/item/today-in-history/november-18 (last visited Oct. 12, 2016).

Daylight Saving Time is "the part of the year when we advance our clocks by one hour, shifting the time of day in relation to where the Sun is above Earth," such that "'daylight' begins an hour later in the morning and lasts an hour longer in the evening," in order to "keep the hours of daylight coordinated with the time that most people are active." National Institute of Standards and Technology, *Local Time FAQs*, https://www.nist.gov/node/437216 (last visited Oct. 12, 2016). Daylight Saving Time begins each year on the second Sunday in March at 2 a.m., at which time clocks must be moved ahead one hour. *Id.* The changeover back to standard time occurs on the first Sunday in November at 2 a.m., at which time clocks must be moved back one hour. *Id.* "Today, the Uniform Time Act of 1966 (15 U.S.C. §§ 260-64) establishes a system of uniform Daylight Saving Time throughout the Nation and its possessions . . . ." U.S Department of Transportation, *Uniform Time*, *supra*.

Lt. Colburn entered the tavern approximately two minutes later and observed the same: numerous alcoholic drinks on the bar and in the bar area, about 12 to 15 patrons seated around the bar or standing, many with drinks inches away from them. He also saw two individuals dancing together to loud music.[5] Lt. Colburn then "ordered the establishment to close, turn the music off and have patrons exit the establishment."

By notice dated November 4, 2014, the Liquor Board cited appellants with violation of Rule 4.05(a), for being open and operating Amigos Bar past 1 a.m., and Rule 4.18, for having "live entertainment" (*i.e.*, "2 people dancing on the first floor area of the establishment while music was being played"), on November 2, 2014. The Liquor Board held a hearing on December 11, 2014, at which time appellants, represented by counsel, were tasked with showing why its liquor license should not be suspended or revoked. With regard to Rule 4.05(a), counsel for appellants argued that Amigos Bar complied with the code because the statute "makes [no] clarification" regarding Daylight Saving Time and "as long as they close by the second one o'clock they have complied with the statute." Counsel further argued that there was no violation of Rule 4.18 because patron dancing, as opposed to a "dance performance," did not fall within the definition of "live entertainment."

---

[5] On direct examination, Lt. Colburn testified to seeing "two people dancing on an open area in front of the DJ, which I can only describe as a dance floor." On cross-examination, however, upon being shown photos of the interior of Amigos Bar, Lt. Colburn agreed that there was no DJ and that the two patrons were dancing in a small area between a "pool table and the bar."

Following the hearing, the chairman of the Liquor Board rejected appellants' arguments, "rule[d] that the facts are clear" and "found the licensee responsible," thereby recommending a "closing of four days" and a "$3,000 fine because . . . it's a subsequent offense."[6] The remaining two commissioners on the Liquor Board agreed. One commissioner noted that despite Amigos Bar being located in a district that allows dancing and live entertainment, appellants did not "get approval from zoning to have dancing at the location." In addition, the other commissioner stated that, with regard to the daylight saving time issue, "it's a clever argument, but . . . it's clear that there was a violation."

Counsel for appellants argued for mitigation of the penalty, prompting the Liquor Board to refer to three letters that it had received on the day of the hearing, over appellants' objection. Two of the letters were from Baltimore City Councilmen Brandon M. Scott and James B. Kraft, respectively, and one was from Kevin L. Bernhard, a Liquor Board member, on behalf of the Highlandtown Community Association, Inc. All three letters asked the Liquor Board to consider or impose the maximum penalty, which at that time included revocation or suspension of the license, and/or "a fine of not more than $3,000." *See* Md. Code (1957, 2011 Repl. Vol.) Art. 2B, §§ 10-401(a)(2) & 16-507; Liquor Board Rule 1.01 *et seq.*

---

[6] Appellants were also responsible for an $125.00 administrative fee.

On December 12, 2014, appellants filed a petition for judicial review. Following a hearing on June 11, 2015, the circuit court affirmed the Liquor Board's decision. This appeal followed.

**Standard of Review**

Judicial review of the decision of a local licensing board is governed by Md. Code (2016), § 4-901 *et seq.* of the Alcoholic Beverages Article ("AB").[7] Pursuant to AB § 4-905(a), "the court shall presume that the action of the local licensing board was proper and best served the public interest." In addition, the petitioner has the burden of proof to show that the decision of the local licensing board being reviewed was against the public interest and either not honestly and fairly arrived at, arbitrary, procured by fraud, unsupported by substantial evidence, unreasonable, beyond the powers of the board, or illegal. AB § 4-905(b); *see also Bd. of License Comm'rs For Prince George's Cnty. v. Glob. Exp. Money Orders, Inc.*, 168 Md. App. 339, 346 (2006).

We have "consistently explained that judicial review of a decision by the Board is similar to review of decisions by most other administrative agencies." *Blackburn v. Bd. of Liquor License Comm'rs for Baltimore City*, 130 Md. App. 614, 623 (2000) (citations omitted). When reviewing administrative decisions, we look through the circuit court, although applying the same standard of review, and evaluate the decision of the agency. *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 553 (2015) (citation omitted).

---

[7] Prior to July 1, 2016, this statute was codified at Md. Code (1957, 2011 Repl. Vol.) Art. 2B, § 16-101.

6

In so doing, we are limited to determining if there is substantial evidence in the record as a whole to support the agency's finding and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law. Stated differently, [o]ur primary goal is to determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious. In applying the substantial evidence test, we must decide whether a reasoning mind reasonably could have reached the factual conclusion the agency reached.

*Matthews v. Hous. Auth. of Baltimore City*, 216 Md. App. 572, 582 (2014) (internal citations omitted). Moreover, "[w]hen reviewing factual issues, we must review the agency's decision in the light most favorable to the agency since its decision is *prima facie* correct and carries with it the presumption of validity." *Bd. of License Comm'rs for Prince George's Cnty.*, 168 Md. App. at 345 (citation omitted).

"When deciding issues of law, . . . our review is expansive, and we may substitute our judgment for that of the agency if there are erroneous conclusions of law," employing a *de novo* standard of review. *Matthews*, 216 Md. App. at 582. But,

[e]ven with regard to some legal issues, a degree of deference should be accorded the position of the administrative agency. Therefore, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. As the [Court of Appeals] noted, the expertise of the agency in its own field should be respected. Similarly, we defer to an agency's interpretation of its own regulations.

*Young v. Anne Arundel Cnty.*, 146 Md. App. 526, 569 (2002) (internal citations omitted). Only "when statutory language is clear and unambiguous" should a reviewing court give no weight to an agency's interpretation and application of the statute it administers. *Macke Co. v. Comptroller of the Treasury*, 302 Md. 18, 22-23 (1984).

**Discussion**

## I.      Prohibited Hours

Appellants do not dispute that Amigos Bar was open at 1:23 a.m. on November 2, 2014, and that Daylight Saving Time ended on that day.[8]  Appellants argue, however, that because their liquor license and the applicable statute "speak in terms of when the Licensee must close as opposed to when the Licensee may remain open," then Amigos Bar was "in compliance . . . so long as it closes by 1:00 A.M. (eastern standard time)." Accordingly, they ask us to answer this "purely legal question" by determining, *de novo*, that appellants were required to stop selling alcohol only "by the second 1:00 A.M.," or during the changeover from Daylight Saving Time to standard time, at 1 a.m. EST.

The Liquor Board found that appellants violated Liquor Board Rule 4.05, which at that time provided that "[n]o licensee shall permit any person to consume alcoholic beverages on the licensed premises during hours when such sales are prohibited by law." In turn, appellants' liquor license permitted alcohol sales "at any time except from [] 1:00 A.M. until 6:00 A.M. daily and no sales on Sunday from 1:00 A.M. until 6:00 A.M.

---

[8] Neither party raised or discussed Art. I § 8 of the Baltimore City Charter, which provides, in pertinent part:

> The official time of the City of Baltimore shall conform to standard time based upon the time of the seventy-fifth meridian, except that, from two o'clock a.m. of the last Sunday in April until two o'clock a.m. of the last Sunday in September of each year, the official time throughout the City of Baltimore shall be advanced one hour . . . .

In any event, to the extent that such provision is applicable to this case, we deem it preempted by federal law, which we discuss, *infra*.

8

Monday . . . ."  At the time of the incident at issue, Eastern Daylight Time was the standard time in effect and, thus, alcohol sales were prohibited beginning at 1 a.m. EDT, on November 2, 2014.  Because it is undisputed that Amigos Bar remained open for at least 23 minutes past that time, and that there was evidence of the sale, service, or on-premises consumption of alcohol during that time, we agree with the Liquor Board that appellants violated Rule 4.05.  We explain further.

Under Maryland law, "[t]he standard time in the State shall be that of the 75th meridian of longitude west from Greenwich," better known as the Eastern Time Zone. Md. Code (2014), § 1-301(a) of the General Provisions Article; 49 C.F.R. § 71.4 (establishing the boundaries of the Eastern Time Zone, in which Maryland is included). The "standard time" of the Eastern Time Zone, like all other U.S. time zones, is established and regulated by federal law.  *See* 15 U.S.C. § 261.  The parties do not dispute that the standard time changes by one hour when Daylight Saving Time is in effect: "[d]uring the period commencing at 2 o'clock antemeridian on the second Sunday of March of each year and ending at 2 o'clock antemeridian on the first Sunday of November of each year, the standard time of each zone . . . shall be advanced one hour and such time as so advanced shall . . . be the standard time of such zone during such period."  15 U.S.C § 260a(a).  Thus, "the standard time of each State observing Daylight Saving Time" – including Maryland –[9] "shall be advanced 1 hour beginning at 2 a.m. on

---

[9] In the Legislative Notes to AB § 11-2003, the Revisor stated:

Former Art. 2B, § 11-502(c), which stated that the hours established by the article for the sale of alcoholic beverages . . . are declared to be in

9

the second Sunday in March of each year and ending at 2 a.m. on the first Sunday in November." *"This advanced time shall be the standard time of each zone during such period."* 49 C.F.R. § 71.2 (emphasis added). As such, at 1:23 a.m. EDT on November 2, 2014, the standard time remained Daylight Saving Time and, therefore, appellants were in violation of Rule 4.05, which prohibited Amigos Bar from selling alcohol "on Sunday from 1:00 A.M. until 6:00 A.M. Monday."

Our holding is not only consistent with the decision of the Liquor Board, to whom we give some deference in the interpretation and application of its own statute, *Young*, 146 Md. App. at 569; our holding is also consistent with previous decisions of our sister states. As the Supreme Court of Wisconsin has noted, this construction of a standard time "conforms to the evident purpose of the legislature to establish a single standard of time which would be in conformity to the standard upon which interstate commerce was based, and to avoid [] confusion . . . ." *State v. Badolati*, 6 N.W.2d 220, 222 (Wis. 1942). As such, "courts cannot recognize any hours or time other than that recognized and established by law, state and national." *Daylight Saving v. Standard Time*, 49 Pa.C.C. 107, 110 (Pa. Com. Pl. 1920) ("Any attempt on the part of the court and court officials to indicate expressly a different standard . . . locally, would lead to confusion and might result in loss and serious embarrassment to individuals."). As the Court of Common

---

accordance with Eastern Standard Time on the last Sunday of October in each year, is deleted as obsolete and unnecessary. Since 2007, Eastern Standard Time begins in Maryland on the first Sunday in November; thus, on the last Sunday of October, the State now observes Eastern Daylight Savings Time.

Pleas of Pennsylvania aptly stated, "those not so limited may if they wish change their hours of labor or meeting and move the hand on their clocks forward or backwards accordingly, but they cannot by so doing change the hour of the day any more than they can change Monday to Tuesday or January to June by so calling them." *Id.*

## II.     Illegal Conduct

Next, appellants contend that the Liquor Board erred in finding that they violated Liquor Board Rule 4.18 because "there was no evidence that the patrons were engaged in any type of live entertainment." In a footnote at the end of its brief, the Liquor Board "concedes that it erred in finding that [appellants] violated Rule 4.18 by allowing 'live entertainment.'" According to the Liquor Board, "for purposes of Rule 4.18 patron dancing is not within the definition of 'live entertainment.'" (Citing Zoning Code, Baltimore City, § 1-153.2, § 1-194.2, § 14-309(b)(1),(2)). Thus, we reverse the circuit court's judgment upholding the Liquor Board's finding that a Rule 4.18 violation occurred.

## III.     Fair Hearing

Finally, appellants aver that they were denied a fair hearing because the Liquor Board reviewed letters *ex parte* from two city councilmen and a community association. According to appellants, the Liquor Board improperly reviewed correspondence from the community that was not available to appellants until the day of the hearing. Moreover, they argue that the Liquor Board imposed a severe sanction due to political pressure. Although we are remanding this case so that the Liquor Board can reassess the sanctions

11

to be imposed based only on a violation of Liquor Board Rule 4.05(a), we shall nonetheless address this issue in the event that the acts complained of recur upon remand.

First, the Liquor Board did not deprive appellants of a fair hearing by receiving the three letters. As explained on the record, the Liquor Board received the correspondence only on the day of the hearing, and informed counsel for appellants that the chairman could "certainly give them to you right now as soon as I see them." After seeing the letters, however, appellants did not seek a postponement to prepare a response to the information, request a brief adjournment to discuss the contents, or refute any of the information in the correspondence. Appellants' failure to take any of these actions does not equate to a denial of a fair hearing.

Moreover, the Liquor Board's review of the letters did not render the hearing unfair. As the Liquor Board correctly states, its role as both a prosecutor and decision maker permits it to review evidence of community complaints about a licensee. *Bd. of Liquor License Comm'rs for Baltimore City v. Hollywood Prods., Inc.*, 344 Md. 2, 9 (1996) ("the Liquor Board has rule making, investigatory, and prosecutorial authority") (citation omitted). The alcohol beverage laws permit Maryland's various liquor boards to receive community input about possible violations by licensees. *See* AB § 4-603(a) (stating that the Liquor Board is authorized to receive written complaints from "citizens, residents, real estate owners and voters of the precinct" in which a liquor licensee is located). The Liquor Board has the authority to revoke or suspend a liquor license "for any reason to promote the peace or safety of the community in which the premises are located." AB § 4-604(a)(1).

In this case, the Liquor Board reviewed complaints about Amigos Bar from two Baltimore City Council Members who wrote to the Liquor Board to raise concerns from their constituents. Additionally, the local community association, on behalf of the residents in the area surrounding Amigos Bar, expressed concerns about appellants' conduct in a letter to the Liquor Board. The Liquor Board, in its capacity as both prosecutor and investigator, was permitted to review these letters from the community.

Next, we also reject appellants' contention that the Liquor Board was biased and lacked impartiality in imposing sanctions. Preliminarily, we note that appellants did not raise this issue by objecting to the Liquor Board's ruling below and, therefore, it is not preserved for our review. Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided [below]"). But, even if it had been preserved, appellants' argument still fails.

Appellants' claim of bias relates to the Liquor Board's review of community letters calling for the maximum penalty. The Liquor Board, however, rejected the requests of the two local councilmen in that it did not impose the maximum penalty. While the Liquor Board could have imposed a maximum sanction of revocation of the liquor license and a $3,000.00 fine, it imposed only a four-day suspension and a $3,000.00 fine. *See* Art. 2B, §§ 10-401(a)(2) & 16-507; Liquor Board Rule 1.01 *et seq*. Therefore, appellants have not shown that, in rendering its decision or imposing the penalty, the Liquor Board was biased or not impartial.

For all of the foregoing reasons, we affirm the circuit court's judgment upholding the Liquor Board's finding of a violation of Liquor Board Rule 4.05(a), reverse that

13

which upheld a finding of a violation of Liquor Board Rule 4.18, and remand this case to the circuit court with instructions to remand to the Liquor Board for imposition of sanctions based only on the single violation.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**