*Balt. City Police Dep't v. Robinson*, No. 764, September Term, 2019. Opinion by Graeff, J.

**PUBLIC SAFETY — LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS — DISPOSITION OF ADMINISTRATIVE ACTION — PENALTY RECOMMENDATION**

The Law Enforcement Officers' Bill of Rights ("LEOBR"), Md. Code Ann. (2018 Repl. Vol.), §§ 3-101–113 of the Public Safety Article ("PS"), guarantees law enforcement officers procedural safeguards before disciplinary action. The final decision of the head of a law enforcement agency (in this case, the "Commissioner") must be issued within 30 days after receipt of a recommendation by the disciplinary hearing board ("Board") regarding a proposed penalty for a law enforcement officer. The trigger for the 30-day deadline is when the Commissioner receives the recommendation, i.e., when he or she has actual physical possession of it, not when it was issued or sent by the Board. In this case, although the Board transmitted the recommendation to the Commissioner's office on September 25, 2018, there was substantial evidence supporting a factual finding that the Commissioner did not receive the recommendation until October 2, 2018. Accordingly, the final decision issued on October 30, 2018, was within the 30-day deadline.

**PUBLIC SAFETY — LAW ENFORCEMENT OFFICERS' BILL OF RIGHTS — DISPOSITION OF ADMINISTRATIVE ACTION — NOTICE AND DISCLOSURE REQUIREMENTS**

PS § 3-108(d)(5) of the LEOBR requires the Commissioner to take certain procedural steps before he or she may increase the recommended penalty of the Board. In particular, PS § 3-108(d)(5)(iii) provides that the Commissioner must disclose and provide "in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based[.]" Although "communication" is not defined in the LEOBR, we interpret the plain meaning of the word to require the transmission of information or ideas from one person to another.

In this case, the officer's disciplinary records, which were not included in the Board's record, did not constitute the transmission of information or ideas from another person because they were part of the internal record maintained by the Department that the Commissioner was authorized, and in fact required, to review and consider pursuant to PS § 3-108(d)(4). Even if the disciplinary records were a "communication" within the meaning of the statute, they did not form the basis of the Commissioner's "decision to consider increasing the penalty[.]" PS § 3-108(d)(5)(iii). That the Commissioner ultimately relied on the disciplinary records in his ultimate decision does not mean that this was something on which the decision "to consider" increasing the penalty was based. To interpret PS § 3-108(d)(5)(iii) to require disclosure of all the materials relied on by the

Commissioner in making the ultimate decision ten days in advance of the meeting would be an illogical construction of the statute because it would not permit the consideration of any new information that may come to light at the meeting, thus diluting the purpose of the meeting and opportunity to be heard. PS § 3-108(d)(5)(ii).

Circuit Court for Baltimore City
Case No. 24-C-18-006067

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 764

September Term, 2019

_____

BALTIMORE CITY POLICE DEPARTMENT

v.

ANDRE ROBINSON

_____

Graeff,
Berger,
Sharer, J. Frederick
      (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: September 30, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

On January 11, 2017, Officer Andre Robinson, appellee, participated in the arrest of a suspected drug dealer. A single, unidentified pill was recovered. After the State declined to prosecute, Officer Robinson returned the pill to the suspect, in violation of the policy of the Baltimore City Police Department (the "BPD" or "Department"), appellant. His supervisor filed a misconduct report, and following a hearing, the administrative board recommended that Officer Robinson be given a severe letter of reprimand and lose 15 days of leave. On review, the BPD Commissioner increased his penalty to termination. Officer Robinson appealed to the circuit court, which reversed the Commissioner's penalty increase and ordered that Officer Robinson be reinstated, with full back pay and benefits.

On appeal, the BPD presents the following questions for this Court's review, which we have rephrased and consolidated, as follows:

1. Was the Commissioner's final order timely pursuant to Md. Code Ann. (2018 Repl. Vol.), § 3-108(d)(1) of the Public Safety Article ("PS") when it issued on October 30, 2018?

2. Did the BPD comply with the Law Enforcement Officers' Bill of Rights' ("LEOBR") disclosure and notice requirements pursuant to PS § 3-108(d)(5)(iii)?

3. If the BPD committed an administrative error, did the circuit court err in reversing the termination, rather than remanding for a correction of any error?

Officer Robinson filed a cross-appeal presenting the following question, which we have rephrased, as follows:

Did the circuit court err in denying Officer Robinson's request for attorneys' fees and costs pursuant to Maryland's Wage Payment and Collection Law?

For the reasons set forth below, we shall reverse the decision of the circuit court with regard to the issues on appeal and remand to that court with instructions to affirm the Commissioner's final administrative decision.  Given our resolution of that appeal, we will dismiss the cross-appeal.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Underlying Incident

On January 11, 2017, Officer Robinson, a 25-year veteran of the Baltimore City Police Department, along with other officers, responded to complaints that an individual was selling drugs on a corner of Harford Road.  After one of the officers observed what appeared to be a narcotics transaction, the suspect entered a nearby McDonald's restaurant.  The officers approached the suspect, and a struggle ensued as the suspect attempted to ingest a green pill that he had removed from his pocket.  The officers were able to recover the pill, and Officer Robinson took possession of it.  The officers were not able to identify the pill at the scene, but the suspect admitted he had a drug problem and his drug of choice was Percocet.

Officer Robinson took the suspect and the pill to the police station and contacted the State's Attorney's Office.  The Assistant State's Attorney ("ASA") advised that,

---

[1] The premise of Officer Robinson's claim for attorneys' fees is that he was the prevailing party.  Because Officer Robinson is no longer the prevailing party, the premise for his argument fails.  Accordingly, we will dismiss the cross-appeal.

2

because they were unable to identify the pill, the State would not pursue charges and Officer Robinson should release the suspect. Officer Robinson filed the required "Investigate and Release" report in accordance with the ASA's instructions.[2] Believing that the unidentified pill was the suspect's property, Officer Robinson returned the pill to the man and drove him home. Officer Robinson did not know the nature of the pill when he returned it to the suspect, and he was not advised by a superior to give back the pill. The BPD policy requires that "[a]ll suspected evidentiary CDS . . . must be brought to [Evidence Control Unit] immediately after packaging[.]"

On January 30, 2017, after Officer Robinson returned from a brief medical leave, his supervisor, Lieutenant Danita Boyd, asked him what he did with the pill that was recovered from the suspect. She needed to complete the unfinished incident report. She wanted to know if the pill had tested positive as CDS, in which case an arrest warrant would have been obtained for the suspect. Officer Robinson completed an administrative report, stating that he gave the pill back to the suspect because he thought it was the suspect's property. Lieutenant Boyd then filed an internal misconduct report against him for violating the BPD policy.

---

[2] Officer Robinson argued during the subsequent investigation and at the Board hearing that this report was later altered without his consent. The Internal Affairs Division ("IAD") stated that the title had been changed from "Investigate and Release" to "CDS," but the narrative of the incident was not altered. Additionally, the first report was unsigned by his supervisor because she wanted to know what he did with the pill before she signed off on it.

## II.

## Administrative Board Hearing

On October 16, 2017, following an investigation, the BPD's Internal Affairs Division ("IAD") sustained the allegation against Officer Robinson for neglecting to submit the suspected CDS to the evidence unit for testing. A second allegation for insubordination was not sustained.

On August 23, 2018, an administrative trial board (the "Board") held a hearing on the matter. An administrative law judge presided, and three fellow BPD officers of varying ranks were selected to consider the charges. Officer Robinson, now represented by counsel, was charged with violating two BPD policies in connection with his failure to submit the pill for testing: (1) Policy 302, Rule 1, which provides that any neglect of duty or misconduct that "tends to undermine the good order, efficiency or discipline of the department" is considered conduct "unbecoming" of the BPD; and (2) Policy 1402, which requires the BPD to "properly control, maintain, inventory, and safeguard" CDS in its custody.[3]

The BPD introduced evidence regarding the incident in question, including witness testimony by Lieutenant Boyd, Officer Robinson, and other officers. Lieutenant Boyd testified that it was not appropriate for Officer Robinson to give the evidence back to the suspect; the pill should have been submitted to the Evidence Control Unit. Counsel for the

---

[3] On judicial review, BPD's attorney proffered that the first charge is a "general duty requirement," and when an officer violates any BPD policy, this charge typically is included as well.

BPD argued that the case warranted termination, stating: "When you give a pill that you don't know what it is back to a suspect, God only knows what danger he could have created by giving that back to him. That is a very dangerous thing for him to do." Counsel also noted that, although she did not have Officer Robinson's "personnel jacket," he had several previous policy violations, including a problem with his driving privileges.[4] Counsel stated that she did not know what discipline he received for those incidents because she did not have his personnel jacket.

Officer Robinson argued that his actions did not violate the two policies in question because the pill was unidentified, and therefore, it had no evidentiary value pursuant to Policy 1402. Officer Robinson also suggested that he had been discriminated against by Lieutenant Boyd based on his gender, and that the current action was motivated by retaliation because he had complained about his unequal treatment.

In a written decision and order summarizing the evidence, the Board found Officer Robinson guilty of both charges based on the Department's proof that Officer Robinson "did not follow departmental policy and procedure with regards to improper handling" of CDS. It also found that Officer Robinson failed to prove that he had been "targeted" by Lieutenant Boyd. Despite the BPD's request for termination, the Board recommended to

---

[4] This driver's license incident, discussed *infra*, occurred close in time to the events pertinent to the policy violations at issue on appeal. Officer Robinson was off-duty on January 13–15, 2017, but when he returned on the January 15, it came to light that his driver's license had expired.

Interim Police Commissioner Gary Tuggle (the "Commissioner") that Officer Robinson receive a severe letter of reprimand and lose 15 days of leave.

## III.

### Commissioner's Decision

By memo dated September 25, 2018, the Board sent a copy of its decision to the Inspector General ("IG"), who oversees the Administrative Hearing Unit. The cover memorandum indicated that various other individuals and offices were carbon copied ("cc'd") on the memo, including the "Office of the Police Commissioner." A document labeled "Commissioner's Office Tracking System" indicates that the Commissioner received the Board's decision from the IG on October 2, 2018.

With an undated memo from the BPD's chief legal counsel, the full record from the Board hearing was sent to the Commissioner's office. The instructions advised that, if the Commissioner was in agreement with the findings and recommendations, the Commissioner should sign and date the packet. The letter advised, however, that if the Commissioner chose to consider increasing the recommended penalty, he needed to follow the steps listed in the memo.

On October 12, 2018, the Commissioner returned the cover sheet to the Administrative Hearing Unit, indicating that he "[d]isapproved" of the penalty recommended by the Board. On October 19, 2019, Officer Robinson was served with a "Notice of Intent to Increase of Punishment Recommended by Administrative Hearing

Board."[5]  The notice stated that, after reviewing the record, the Commissioner "intends to increase the punishment recommended."  It also provided that, "[i]n addition to the record of the hearing and the findings of the Administrative Hearing Board, the decision of the Commissioner to increase . . . the penalty may be wholly or partly based on . . . documents or communications" attached to the notice.[6]  No documents were attached.  The notice also set a date for a meeting to allow Officer Robinson the opportunity to be heard on the record pursuant to Md. Code Ann. (2018 Repl. Vol.), § 3-108(d)(5)(ii) of the Public Safety Article ("PS").  On October 19, 2018, Officer Robinson signed the notice, indicating his intent to attend the meeting.

On October 29, 2018, Officer Robinson, represented by counsel, met with the Commissioner.  The BPD counsel and other administrative staff also were present.  At the outset, Officer Robinson submitted a memorandum detailing his position.  The memorandum stated:

> When he returned the pill [to the suspect], Officer Robinson erroneously thought that he was following the department's policy regarding the handling of evidence under these circumstances.  He erroneously returned the pill instead of returning it to the department's Evidence Control Unit (ECU) where, presumably, it would have been destroyed as the department was not

---

[5] Officer Robinson argued that he was not informed about the Board's decision, issued on September 25, until he received this notice on October 19.  He also asserted that he did not receive a copy of the Board's recommendation until October 27 (two days before the Commissioner's meeting), after his newly retained counsel requested it.  The timeliness of these notifications, however, is not before this Court on appeal.

[6] The BPD notes that there is a typo in this notice, and instead of saying "the decision of the Commissioner **to increase increasing** the penalty may be wholly or partly based on the following documents . . . ."  The notice should read as follows: "the decision of the Commissioner **to consider increasing** the penalty . . . ."

7

going to spend the time, money, or human resources to test a pill that was <u>not</u> going to be involved in a prosecuted case. This was not a "conduct" issue. It was a misapprehension of policy when applied to a novel situation.

With respect to procedural errors relevant to this appeal, Officer Robinson argued that the 30-day deadline to increase the recommended punishment had already expired. He asserted that the recommendation had been circulated on September 25, and the punishment could not be increased after October 25. In response to this point, the Commissioner stated during the meeting that the memo showed that September 25 was the day the Board's decision was generated, not the date his office received it. The Commissioner subsequently found that he received the decision on October 2, 2018.

With respect to the substantive arguments, Officer Robinson's counsel argued that returning the pill to the suspect was an "honest mistake" that resulted from Officer Robinson's innocent misapprehension of the BPD policy and did not "warrant an enhanced sanction." When the Commissioner questioned how Officer Robinson, a 25-year officer, did not know that CDS had to be submitted, Officer Robinson stated that it was a mistake, but it also indicated his view that there had not been a lawful arrest. The Commissioner then asked about Officer Robinson's statements, in which he blamed Lieutenant Boyd as having a vendetta. Officer Robinson talked about people with problems with Lieutenant Boyd's authoritarian policing and putting him in an uncomfortable position. He stated that he was not blaming Lieutenant Boyd for his actions, but he had a conflict with her, and she had filed five misconduct reports against him, including the one at issue.

The Commissioner then asked Officer Robinson to "tell [him] about [his] disciplinary history" with the department. Officer Robinson responded that, in October

8

2007, he was sitting in his patrol car with a civilian woman when her husband attacked the car with a tire iron. When Officer Robinson got out of the car, the man continued to come towards him, despite warnings to stop, so he shot the man twice in the legs. The Department reprimanded him for being off his post and for having an unauthorized passenger in his patrol vehicle. Officer Robinson stated that he felt that the BPD's final report was "defamation" because it made it seem as if he left his post to be with his girlfriend, but they were not in a relationship.

The Commissioner then indicated that he saw in Officer Robinson's history that his driver's license had been suspended. Officer Robinson explained that, unbeknownst to him, his license had expired while he was on vacation, and he did not realize it until he was involved in a fender bender soon after returning to work. He stated that he did not discover until recently that the IAD had sustained a violation of "conduct unbecoming" of a police officer for this incident, which he thought was "egregious" under the circumstances. Although he agreed that, because he was a police officer who needed a driver's license, he had a responsibility to make sure his license did not expire, he stated that he felt like there was always "an attempt to charge [him] with the most egregious charges even if they're minor charges." He stated that he had been passed over the prior week for a promotion "for what [he] assumed were minor charges."

The Commissioner then asked if he had any current charges. Officer Robinson started to talk about a charge regarding a prisoner, and then Officer Robinson's counsel proffered that there was a pending allegation involving Officer Robinson allegedly taking an unauthorized four-day vacation while on medical leave just following the incident with

9

the pill in January 2017. Counsel stated that he had an affidavit from the nurse who accompanied him on the trip. Officer Robinson said she was not his nurse; he was dating her. The Commissioner, however, noted that the woman stated in her affidavit that the two had a "platonic friendship," which is not the same as "dating." Counsel then stated that the point of the affidavit was that the woman heard the supervisor give Officer Robinson permission to go on vacation.[7]

On October 30, 2018, the Commissioner issued his final decision in a letter addressed to Officer Robinson. The letter, in part, stated the following:

> I received the findings, conclusion and recommendations of the hearing board on October 2, 2018. After I reviewed their findings, conclusions and recommendations and the entire record of the administrative hearing including the transcripts of the entire hearing and all exhibits that were admitted into evidence, I determined that I might increase the discipline recommended by the hearing board. As the Interim Police Commissioner, I retain full authority to determine final discipline as noted in Policy 310, Policy Section, No. 2. Accordingly, pursuant to the Law Enforcement Officers Bill of Rights, Section 3-108(d)(5), I afforded you and your counsel the opportunity to be heard on the record in this matter on October 29, 2018.
>
> Having now considered your remarks and those of your counsel, the entire record of the hearing, and the findings, conclusions and recommendations of the hearing board, I have decided to increase the discipline recommended by the hearing board to termination.
>
> I have decided to do so based on the totality of the hearing record and the evidence presented therein, your disciplinary history and the statements and documents that you provided during our October 29, 2018 meeting.

---

[7] Ms. McLean's affidavit stated that she overheard the phone conversation between Officer Robinson and his supervisor, during which the vacation was authorized on the condition that he submit documentation that the trip was planned and paid for prior his unexpected medical leave.

The letter explained that, with respect to the underlying incident, the Commissioner did not accept Officer Robinson's characterization of his transgression as "minor," noting the nationwide opioid epidemic. It stated:

> The record does not demonstrate that [the suspect] possessed a valid prescription or was in possession of any pill bottle that would have supported your speculation that the pill was not a controlled dangerous substance (CDS). Furthermore, had the pill, the suspected CDS, been submitted and analyzed, it would have either confirmed or dispelled Captain Shorter's suspicions, based on his observations, that the pill was CDS, after which an arrest warrant or criminal summons could have been sought. Your deliberate decision to return the pill, instead of handling it appropriately, prevented that investigative activity from taking place. Thus, I find it serious misconduct.

The Commissioner's letter further stated that Officer Robinson's disciplinary record, "past, present and pending, demonstrates a lack of accountability and responsibility and causes me to question [Officer Robinson's] ability to perform [his] duties as a police officer." More specifically, he cited the 2007 shooting incident, where Officer Robinson was disciplined for having an unauthorized person in his patrol vehicle and for being off his post. The Commissioner stated that Officer Robinson continued to focus on proving that he was not in a romantic relationship with the woman, "without recognizing and taking accountability for [his] own culpability in creating the situation," which demonstrated his "lack of judgment." The Commissioner also stated that Officer Robinson's failure to maintain a valid driver's license in January 2017, and his "dismissive attitude about it," demonstrated a "lack of personal responsibility and accountability."

Finally, the Commissioner stated that the pending disciplinary issue regarding Officer Robinson's vacation while on medical leave also contributed to his decision to terminate Officer Robinson. The Commissioner noted that Officer Robinson told him that

11

Ms. McLean was his girlfriend, but the woman stated in the affidavit that they had a "platonic friendship." The Commissioner concluded that either Officer Robinson had been not truthful in the meeting or he had submitted an affidavit that contained a material misrepresentation. "Either way," Officer Robinson had provided false information.

Noting that one of the most important functions of being a police officer is the ability to provide correct and accurate information, Officer Robinson's inability to do that demonstrated a "lack of ability to perform a fundamental function" of his job. He also stated that Officer Robinson's "overall attitude" regarding that incident "demonstrate[d] a lack of accountability and responsibility" for his actions.

In conclusion, based on "the hearing board's findings, and the record in support thereof, [his] disciplinary record and the statements [he] made during [their] meeting," the Commissioner determined that termination was appropriate.

## IV.

### Circuit Court Proceedings

On November 16, 2018, Officer Robinson filed a Notice of Administrative Appeal to the Circuit Court for Baltimore City, challenging the Commissioner's increased penalty. On March 18, 2019, Officer Robinson filed a memorandum in support alleging five procedural errors. Two of these alleged errors are before us on appeal: (1) the Commissioner's decision was time-barred by PS § 3-108(d)(1); and (2) "the Commissioner considered matters outside the Board record in reaching his decision and failed to provide [Officer Robinson] with notice that he would do so in advance of the hearing."

12

With regard to the first issue, Officer Robinson argued that the BPD violated PS § 3-108(d)(1) because the Board's decision was "first distributed" to the Commissioner's office on September 25, 2018, and therefore, the 30-day deadline expired on October 25, 2018.[8] Consequently, he asserted that both the October 29 meeting and the October 30 decision were beyond the statutory deadline.

Second, Officer Robinson argued that the BPD violated PS § 3-108(d)(5)(iii) because the Commissioner did not provide notice 10 days in advance of their meeting that his disciplinary record, which was not included in the Board's record, would be considered in the decision to increase the penalty. He asserted that this was "a due process and statutory violation of significance" because, had he been aware these issues would be considered, he would have prepared to address the concerns "in greater substance." As a result of these procedural errors, Officer Robinson requested that the circuit court reverse the Commissioner's decision to enhance his punishment and that he be reinstated to his former position and rank with backpay. He also requested "that a hearing be scheduled to consider an Attorneys' Fee and Cost petition."

On April 26, 2019, the BPD filed an opposition motion to Officer Robinson's petition for judicial review. In response to the alleged violation of PS § 3-108(d)(5)(iii), the BPD argued that PS § 3-108(d)(4) explicitly required the Commissioner to "consider the law enforcement officer's past job performance," which included his disciplinary

---

[8] At oral argument, counsel stated that the Board's decision was distributed by inter-office mail.

record. Moreover, the BPD asserted that his disciplinary record was part of the investigative file, which was provided to Officer Robinson's counsel.[9] The BPD also argued that the statute does not require disclosure of all information, but only of "oral and written communications." The BPD asserted that Officer Robinson's disciplinary history was not a communication.

With respect to PS § 3-108(d)(1), the BPD argued that the Commissioner officially receives the Board's decision when his office receives it, not necessarily when it is sent. The Commissioner's office in this case did not receive the decision until October 2, as evidenced by the department's internal document tracking system, and therefore, the 30-day time period did not begin until that date.

Finally, although the BPD maintained that it did not violate PS § 3-108, it argued that the question was "ultimately immaterial" because Officer Robinson failed to show prejudice from the alleged errors, as required in *Baltimore City Detention Center v. Foy*, 461 Md. 627, 647–48 (2018). Accordingly, the BPD requested that the circuit court affirm the Commissioner's findings and uphold Officer Robinson's termination.

On May 29, 2019, the circuit court held a hearing on Officer Robinson's petition. Both parties reiterated the arguments they had made in their motions. In addition, the BPD argued that Officer Robinson was not prejudiced by the alleged failure to disclose communications outside the record because he was not forced into the meeting unprepared.

---

[9] The BPD acknowledges on appeal that this assertion was incorrect. Although an officer's disciplinary file typically is included in the administrative hearing record, it was not in the case.

14

To the contrary, he submitted a detailed memorandum that included an affidavit regarding one of the disciplinary incidents in question. Moreover, Officer Robinson was aware of his own prior history, and therefore, he was inherently prepared to address it.

Although the BPD conceded that the full disciplinary record was not before the Board, it highlighted that certain incidents were discussed at the hearing and the record was provided to his counsel in advance as part of the BPD's case materials. As a result, Officer Robinson was on notice that the Commissioner might take his prior history into consideration. Counsel for Officer Robinson responded by emphasizing that the record itself was not before the Board, and therefore, disclosure 10 days prior to the meeting was required.

On June 13, 2019, the circuit court issued its Memorandum Opinion and Order, finding in favor of Officer Robinson on two of his claims.[10] First, the circuit court found that the BPD failed to follow the mandatory notice provisions under PS § 3-108(d)(5)(iii) because the Commissioner's decision to increase Officer Robinson's penalty was "based on matters outside the record" of the Board "without providing notice to [Officer Robinson] that he intended to do so." The court noted that this was of particular consequence because the Commissioner "focuse[d] more on matters outside the record than the underlying guilty findings related to the failure to submit a pill into evidence."

Second, the circuit court found that the Commissioner's final order was time-barred by PS § 3-108(d)(1) because it was "clear from the record that the Board transmitted its

_____

[10] The circuit court found in favor of the BPD on the other three alleged violations, which, as indicated, are not at issue in this appeal.

15

Administrative Hearing Decision and Order to the Commissioner and others on September 25, 2018." It found that, because the Commissioner "issued his termination decision five days beyond the 30-day deadline[,]" the order was untimely.

Accordingly, the circuit court reversed the Commissioner's decision to increase the penalty and ordered that Officer Robinson be reinstated to his job with full back pay and benefits. The BPD appeals this portion of the order.

The circuit court also denied Officer Robinson's request for attorneys' fees. On the same day that the court's decision was entered, Officer Robinson filed a Motion for Partial Reconsideration, arguing that the denial of his request for attorneys' fees and costs was improper pursuant to Maryland's Wage Payment and Collection Law ("MWPCL"), more specifically, Md. Code Ann. (2018), §§ 3-427(d)(1) and 3-507.2(b) of the Labor & Employment Article ("LE"). The BPD filed an opposition, arguing that the motion should be denied because the MWPCL is not applicable to Officer Robinson's LEOBR claims. On July 10, 2019, the circuit court denied the Motion for Reconsideration without a hearing. Officer Robinson filed a cross-appeal to this Court, challenging the denial of his request for attorneys' fees and costs.

## STANDARD OF REVIEW

When reviewing an administrative agency's decision, "this Court reviews the agency's decision, not the circuit court's decision." *Belfiore v. Merch. Link, LLC*, 236 Md. App. 32, 43 (2018) (quoting *Long Green Valley Ass'n v. Prigel Family Creamery*, 206 Md.

16

App. 264, 273–74 (2012)).[11] "[O]ur primary goal is to determine whether the agency's decision is in accordance with the law or whether it is arbitrary, illegal, and capricious." *Rojas v. Bd. of Liquor License Comm'rs for Balt. City*, 230 Md. App. 472, 481 (2016) (quoting *Matthews v. Hous. Auth. of Balt. City*, 216 Md. App. 572, 582, *cert. denied*, 439 Md. 330 (2014)).

Accordingly, we "apply a limited standard of review and will not disturb an administrative decision on appeal if substantial evidence supports factual findings and no error of law exists." *Belfiore*, 236 Md. App. at 43 (quoting *Long Green Valley*, 206 Md. App.at 273–74). Under this more deferential standard, this Court may "overrule an agency's factual finding only when the finding is 'unsupported by competent, material, and substantial evidence in light of the entire record as submitted.'" *Spencer v. Md. State Bd. of Pharmacy*, 380 Md. 515, 529 (2004) (quoting Md. Code (1999 Repl. Vol.), § 10-222(h)(3)(v)). "[J]udicial review of agency factual findings is limited to ascertaining whether a reasoning mind could have reached the same factual conclusions reached by the agency on the record before it." *Id.* If, however, the case "involves an interpretation and application of Maryland statutory and case law, [we] must determine whether the lower court's conclusions are legally correct under a *de novo* standard of review." *Motor Vehicle*

---

[11] "We have concluded that the scope of judicial review in a LEOBR case is that generally applicable to administrative appeals." *Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 121 (2002) (cleaned up). *Accord Balt. Police Dep't v. Antonin*, 237 Md. App. 348, 359–60, *cert. denied*, 461 Md. 459 (2018), *cert. denied*, 139 S. Ct. 1214 (2019).

17

*Admin. v. Smith*, 458 Md. 677, 686 (2018) (quoting *Nesbit v. Gov't Employees Ins. Co.*, 382 Md. 65, 72 (2004)).

## DISCUSSION

## I.

## Law Enforcement Officers' Bill of Rights

Before we address the BPD's specific contentions on appeal, we briefly will discuss the Law Enforcement Officers' Bill of Rights ("LEOBR"), i.e., PS §§ 3-101–113. The LEOBR "was enacted in 1974 with the primary purpose of 'guarantee[ing] certain procedural safeguards to law enforcement officers during any investigation or interrogation that could lead to disciplinary action, demotion, or dismissal.'" *Montgomery County v. Fraternal Order of Police*, 427 Md. 561, 573 (2012) (quoting *Coleman v. Anne Arundel Cty. Police Dep't*, 369 Md. 108, 122 (2002)). "The LEOBR grants 'extensive rights to law enforcement officers that are not available to the general public.'" *Coleman*, 369 Md. at 122 (quoting *Meyers v. Montgomery Cty. Police Dep't*, 96 Md. App. 668, 686 (1993)). As a result, the LEOBR is an "officer's exclusive remedy in matters of departmental discipline." *Coleman*, 369 Md. at 122. *Accord Moats v. City of Hagerstown*, 324 Md. 519, 526 (1991) ("The language and history of the [LEOBR] demonstrates an intent to establish an exclusive procedural remedy for a police officer in departmental disciplinary matters.").

The statute provides that, "if the investigation or interrogation of a law enforcement officer results in a recommendation of demotion, dismissal, transfer, loss of pay, reassignment, or similar action that is considered punitive, the law enforcement officer is entitled to a hearing on the issues by a hearing board." PS § 3-107(a)(1). If the Board

18

"makes a finding of guilt," it then reconvenes the hearing to receive evidence and "consider the law enforcement officer's past job performance and other relevant information as factors before making recommendations" to the Commissioner. PS § 3-108(a)(4).

After the hearing, the Board "may recommend the penalty it considers appropriate under the circumstances." PS § 3-108(b)(1). This recommendation, however, is not final (except under certain circumstances) and requires review by the "chief," here, the BPD Commissioner. PS § 3-108(c)(d).

In this case, the BPD proffered that it is department policy for the Board's recommendation to first be sent to the IG's office, as the head of the Administrative Hearing Unit, for review to ensure finality and accuracy. Once the IG approves the recommendation, it is then sent to the Commissioner's office for review.

The BPD Commissioner must review the "findings, conclusions, and recommendations of the Board" and issue a final order "[w]ithin 30 days after receipt of the recommendations[.]" PS § 3-108(d)(1). The Board's recommendation is not binding on the Commissioner, and he or she has discretion to adopt the recommendation or deviate from it. PS § 3-108(d)(3). Before imposing a penalty, the Commissioner must consider the officer's "past job performance as a factor[.]" PS § 3-108(d)(4).

The Commissioner may elect to increase the recommended penalty only if he or she personally:

> (i) reviews the entire record of the proceedings of the hearing board;
>
> (ii) meets with the law enforcement officer and allows the law enforcement officer to be heard on the record;

19

(iii) discloses and provides in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based; and

(iv) states on the record the substantial evidence relied on to support the increase of the recommended penalty.

PS § 3-108(d)(5).

With this background in mind, we turn to the parties' contentions.

## II.

### PS § 3-108(d)(1)

PS § 3-108(d)(1) provides that, "[w]ithin 30 days after receipt of the recommendations of the hearing board, the [Commissioner] shall review the findings, conclusions, and recommendations of the hearing board; and issue a final order." The BPD argues that the circuit court erred in finding that the Commissioner's October 30, 2018, decision was time barred. We agree.

The circuit court's decision in this regard was as follows:

It is clear from the record that the Board transmitted its Administrative Hearing Decision and Order to the Commissioner and others on September 25, 2018. It is also clear that the Commissioner issued his termination decision five days beyond the 30-day deadline. The Court concludes that the decision of the Commissioner was time-barred by section 3-108(d)(1) of the Public Safety Article.

The circuit court's finding that the decision was transmitted on September 25, 2018, was based on a memo of that date to the IG, with a cc to the Commissioner. The September 25, 2018, memorandum indicating transmittal of the decision, however, is not necessarily equivalent to receipt by the Commissioner. Counsel for the BPD explained that, once the

20

memo was generated, it went to the IG for review before going to the Commissioner, accounting for why the Commissioner received it on a later date.[12]

As the Court of Appeals recently made clear in an analogous context, however, in construing a statute with a 30-day deadline for a final decision "after receipt" of a recommendation, the triggering event is the "receipt" of the recommendation, i.e., the date the Commissioner was in actual physical possession of the recommendation, not when it was issued/sent by the Board. *Foy*, 461 Md. at 638–39.[13] The Commissioner explicitly stated in his written decision that he did not receive the decision until October 2, 2018. The date on which the Commissioner received the Board's decision was an administrative finding of fact. Factual findings will not be overturned unless reasonable minds could not have reached that factual conclusion. *Motor Vehicle Admin. v. McMillan*, 428 Md. 560, 565 (2002) (quoting *Motor Vehicle Admin. v. Weller*, 390 Md. 115, 141 (2005)) ("The

---

[12] Although the IG's approval of the Board's decision is not statutorily required, the department is entitled to establish its own internal procedures in compliance with the LEOBR, and PS § 3-108(d)(1) does not require that the Commissioner receive the decision directly from the Board itself. *See Balt. City Det. Ctr. v. Foy*, 235 Md. App. 37, 60 (2017) (The statute does not "concern itself with the modality of delivery" from the Board to the Commissioner.), *rev'd on other grounds*, 461 Md. 627 (2018).

[13] Although the statute at issue in *Foy* was Md. Code Ann. (2017 Repl. Vol.), § 10-910(b) of the Correctional Services Article ("COR"), otherwise known as the Correctional Officers' Bill of Rights ("COBR"), and not the LEOBR, the two statutes are similar, and COBR was modeled after the LEOBR. *Balt. Cty Det. Ctr. v. Foy*, 461 Md. 627, 631, 632–33 (2018) (Courts "look to LEOBR as an informative source for interpreting the COBR's provisions."). *Accord Kearney v. France*, 222 Md. App. 542, 544 (2015). Moreover, the provisions pertinent to this appeal are virtually identical to those found in COBR. *Compare* PS § 3-108(d)(1) and (5) *with* COR § 10-910(b)(1) and (6).

'substantial evidence test' has been met if 'a reasoning mind reasonably could have reached the factual conclusion the agency reached.'").

Here, there was substantial evidence to support the Commissioner's finding that he received the recommendation on October 2, 2018. The print-out from the "Commissioner's Office Document Tracking System" showed that the Board's recommendation was received by the Commissioner on October 2, 2018.

Accordingly, there was substantial evidence to support the Commissioner's factual finding that his office received the Board's decision on October 2, 2018, and therefore, the final decision issued on October 30 was timely pursuant to PS § 3-108(d)(1)'s 30-day deadline. The circuit court erred in finding otherwise.

**III.**

**PS § 3-108(d)(5)(iii)**

The next issue on appeal involves PS § 3-108(d)(5)(iii), which provides that the Commissioner "may increase the recommended penalty of the hearing board" only if he or she personally takes certain steps. The step at issue here is the requirement that the Commissioner "discloses and provides in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based[.]" Officer Robinson argues, and the circuit court found, that the Commissioner failed to follow this mandatory notice provision. In that regard, it found that the Commissioner did not give notice that he was going to rely on Officer Robinson's

disciplinary record, which was not part of the Board's record but was used by the Commissioner in rendering his ultimate decision to increase Officer Robinson's penalty.

The BPD argues that the circuit court erred in this regard. It asserts that notice of the use of Officer Robinson's disciplinary record was not required for two reasons. First, it argues that Officer Robinson's disciplinary record was not a "communication" within the meaning of the statute. Second, it did not form the basis of the "decision to consider" increasing his penalty. The BPD draws a distinction between the initial decision to consider making an increase and the decision to actually make the increase, and argues that the statute only requires disclosure of communications pertaining to the former so that officers will know what information motivated the decision to disapprove the Board's recommendation. In short, they argue that § 3-108(d)(5)(iii) "says absolutely nothing about the basis for the ultimate penalty decision[.]"

Officer Robinson contends, by contrast, that the plain language of the statute requires notice of "all matters to be considered outside of the Trial Board's Record" 10 days in advance. He argues that the dictionary definition of "communications" includes written documentation, such as his disciplinary file. Officer Robinson further asserts that the purpose of the statute is to protect the "procedural and due process rights of law enforcement officers responding to disciplinary charges" and to provide "procedural safeguards during any hearing concerning disciplinary action, demotion or dismissal." In this case, because he was not provided notice that his record would be included in the Commissioner's review, he did not have an opportunity to adequately respond to the specific disciplinary incidents that the Commissioner considered.

23

Because we are asked to interpret and apply statutory law, we review the issue *de novo*. *Smith*, 458 Md. at 686. The Court of Appeals has described our approach to statutory interpretation as follows:

> The cardinal rule of statutory construction is to ascertain and effectuate the intent of the General Assembly.
>
> As this Court has explained, to determine that purpose or policy, we look first to the language of the statute, giving it its natural and ordinary meaning. We do so on the tacit theory that the General Assembly is presumed to have meant what it said and said what it meant. When the statutory language is clear, we need not look beyond the statutory language to determine the General Assembly's intent. If the words of the statute, construed according to their common and everyday meaning, are clear and unambiguous and express a plain meaning, we will give effect to the statute as it is written. In addition, we neither add nor delete words to a clear and unambiguous statute to give it a meaning not reflected by the words that the General Assembly used or engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning. If there is no ambiguity in the language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends.

*Bellard v. State*, 452 Md. 467, 481 (2017) (quoting *Wagner v. State*, 445 Md. 404, 417–19 (2015)).

In interpreting the requirement in PS § 3-108(d)(5)(iii) that the Commissioner "discloses and provides in writing to the law enforcement officer, at least 10 days before the meeting, any oral or written communication not included in the record of the hearing board on which the decision to consider increasing the penalty is wholly or partly based," we begin with the phrase "oral or written communication." The word "communication" is not defined in the LEOBR, and therefore, we consult other sources for its plain meaning. *See Foy,* 461 Md. at 645 (When a statute fails to explicitly define a term, "we may consult a dictionary and give words their ordinary meaning."); *Crofton Convalescent Cntr. Inc. v.*

24

*Dep't of Health & Mental Hygiene, Nursing Home Appeal Bd.*, 413 Md. 201, 217 (2010) ("The absence of an express definition of a term, however, does not preclude us from construing its plain meaning.").

*Black's Law Dictionary*, 348 (11th ed. 2019) defines "communication" as "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception" or "[t]he messages or ideas so expressed or exchanged." *Merriam-Webster Collegiate Dictionary*, 251 (11th ed. 2009) defines "communication" as "an act or instance of transmitting" or "a process by which information is exchanged between individuals through a common system of symbols, signs, or behavior." *American Heritage College Dictionary* (5th ed. 2020) defines it as "[t]he exchange of thoughts, messages, or information, as by speech, signals, writing, or behavior."

These definitions all require the transmission of information or ideas from one person to another. Indeed, the BPD concedes on appeal that, if one of Officer Robinson's supervisors or co-workers had sent the Commissioner a letter, e-mail, text, or pulled him aside to discuss Officer Robinson's history with the department, that would be considered a "communication" within the meaning of the statute. *See Vandevander v. Voorhaar*, 136 Md. App. 621, 630–31, *cert. denied*, 364 Md. 463 (2001) (Chief violated this LEOBR requirement when he failed to disclose that he had discussed the Board's recommendation with another officer after he received it from the Board.), *abrogated on other grounds by Foy*, 461 Md. 627.

25

Officer Robinson's disciplinary record, by contrast, did not constitute the transmission of information or ideas from another person. Rather, it was part of the internal record maintained by the Department that the Commissioner was authorized, and in fact required, to review and consider pursuant to PS § 3-108(d)(4). Thus, it is not a "communication" under the plain language of the statute. PS § 3-108(d)(5)(iii). By requiring disclosure of communications not in the record, the statute protects officers from being blind-sided by undisclosed information, a purpose not undermined here, where Officer Robinson was aware of his own disciplinary history.

In any event, we agree with the BPD that, even if the disciplinary records were a written "communication," there was no violation of the notice provision, which requires disclosure of communications not included in the record on which the decision to consider increasing the penalty was based. That the Commissioner ultimately relied on Officer Robinson's disciplinary record, and his explanation for it, in his ultimate decision does not mean that this was something on which the decision "to consider" increasing the penalty was based. In construing statutes, we must avoid constructions that render any portion of the statute superfluous. *Stracke v. Estate of Butler*, 465 Md. 407, 428 (2019) (quoting *Blondell v. Balt. City Police Dep't*, 341 Md. 680, 691 (1996)) ("We must interpret a statute as 'to give every word effect, avoiding constructions that render any portion of the language superfluous or redundant.'"). The General Assembly did not draft the statute to read that the Commissioner must disclose communications "on which the *decision to increase* the penalty is wholly or partly based," but only communications prior to the hearing that led to the decision to "consider" increasing the penalty.

26

Indeed, as the BPD correctly notes, if the LEOBR required disclosure of all the materials relied on by the Commissioner in making the ultimate decision in advance of the meeting, it would not permit the Commissioner to consider any new information that may come to light at the meeting. This would be an illogical construction of the provision because it would dilute the purpose of the meeting and opportunity to be heard, which are mandatory procedural protections set forth in the statute. *Bell v. Chance*, 460 Md. 28, 53 (2018) ("Throughout [the statutory construction] process, we avoid constructions that are illogical or nonsensical, or that render a statute meaningless."); *Schreyer*, 416 Md. at 101 (quoting *Maryland-National Capital Park & Planning Comm'n v. Anderson*, 164 Md. App. 540, 579 (2005)) ("[W]e consider the language of the relevant provision not in isolation but within the context of the statutory scheme as a whole[.]"); PS § 3-108(d)(5)(ii) (Commissioner may only increase the penalty if he "meets with the law enforcement officer and allows the law enforcement officer to be heard on the record.").

Accordingly, the Commissioner was not obligated under PS § 3-108(d)(5)(iii) to disclose Officer Robinson's disciplinary record 10 days prior to their meeting. We vacate the decision of the circuit court in this regard.[14]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR THE CIRCUIT**

---

[14] As indicated, because the premise for the request for attorneys' fees, i.e., that Officer Robinson is a prevailing party, fails, his cross-appeal also fails. *See Giant of Md., LLC v. Taylor*, 221 Md. App. 355, 367, *cert. denied*, 442 Md. 745 (2015) (Employee, who had previously been the prevailing party in an action against employer, was not entitled to enforce fee award following appellate reversal of judgment on the merits because she was no longer the prevailing party.).

27

**COURT TO AFFIRM THE COMMISSIONER'S DECISION. CROSS-APPEAL DISMISSED. COSTS TO BE PAID BY APPELLEE.**